NELSON VALENTÍN GONZÁLEZ y OTROS, demandantes y peticionarios, *v.* PABLO CRESPO TORRES, ALCALDE DEL MUNICIPIO DE AÑASCO, demandado y recurrido.

*Número:* CC-97-614          *Resuelto:* 26 de junio de 1998

*Miguel A. Montalvo Delgado*, abogado de los peticionarios; *Israel Roldán González*, abogado del recurrido.

EL JUEZ ASOCIADO SEÑOR FUSTER BERLINGERI emitió la opinión del Tribunal.

Tenemos la ocasión para interpretar el alcance de la Regla 34.2 de Procedimiento Civil de Puerto Rico, 32 L.P.R.A. Ap. III. Nos toca resolver si procede excluirse del juicio el testimonio de un testigo esencial como sanción por éste no haber comparecido antes a deponer, luego de citársele para ello, cuando la parte que interesa el testimonio judicial no es responsable de que a dicho testigo no se le haya podido tomar una deposición con anterioridad al juicio.

I

El 22 de julio de 1991 el Dr. Nelson Valentín y el Municipio de Añasco suscribieron un contrato en virtud del cual el galeno prestaría servicios médicos nocturnos en el Centro de Diagnóstico y Tratamiento (en adelante el Centro) de dicho municipio. El contrato aludido se extendía sólo hasta el 22 de agosto de 1991, cuando podía ser renovado por mutuo acuerdo.

Conforme a las alegaciones de la parte demandante, antes de que el contrato aludido expirara, un funcionario municipal convocó al doctor Valentín para que acudiese a renovar su contrato, por lo que éste compareció a la Alcaldía de Añasco el 14 de agosto de 1991 y suscribió un nuevo contrato de servicios médicos, igual al anterior, hasta el 31 de diciembre de 1991. Ese día no se le entregó copia del contrato escrito al doctor Valentín, porque el Alcalde, en representación del Municipio, debía firmarlo también y no lo había hecho aún. El doctor Valentín suscribió el contrato aludido en presencia del Dr. Rolando Monteverde, quien también firmó el suyo de igual modo en esa misma ocasión.

El 18 de agosto de 1991, mientras hacía su guardia nocturna en el Centro de Añasco, el doctor Valentín procuró y obtuvo ayuda de un médico privado en relación con una paciente del Centro, luego de hacer esfuerzos infructuosos para obtener tal ayuda de funcionarios del municipio. El médico que ayudó a la paciente aludida era el candidato a la Alcaldía de Añasco del partido opositor al del incumbente que antes había contratado al doctor Valentín.

En los días siguientes, el doctor Valentín fue excluido del programa de servicios médicos nocturnos del Municipio, alegadamente por órdenes del Alcalde que antes lo había contratado. El doctor Valentín no volvió a prestar servicios en el programa en cuestión a partir de 31 de agosto de 1991.

Oportunamente, el doctor Valentín instó una acción contra el Alcalde de Añasco. Solicitó que a éste se le·ordenara desistir de su alegada actuación ilegal y que le permitiera al peticionario continuar prestando servicios médicos nocturnos en el Centro, conforme al contrato que tenía con el Municipio. El doctor Valentín solicitó también el pago de todas las guardias médicas que hubiese realizado, si se lo hubieran permitido, más la indemnización de otros daños y perjuicios sufridos por la actuación del Alcalde. En particular, alegó que había incurrido en obligaciones económi-

cas por razón de su expectativa de continuar prestando servicios médicos nocturnos al Municipio.

En contestación a la acción del doctor Valentín, el Alcalde de Añasco alegó, *inter alia,* que el único contrato de éste con el Municipio había expirado y no había sido renovado. Se negó asimismo que el Municipio le hubiera ofrecido una renovación de su contrato al doctor Valentín y que éste hubiese firmado un nuevo contrato.

Luego de varios incidentes procesales, que no son pertinentes a lo que aquí nos concierne, el 30 de noviembre de 1991, durante el descubrimiento de prueba, el demandante anunció a la parte demandada que el Dr. Rolando Monteverde sería uno de sus testigos. El demandante, además, *le envió a la parte demandada una copia de una declaración jurada del doctor Monteverde,* en la cual éste afirmaba que el 14 de agosto de 1991, tanto él como el doctor Valentín habían firmado nuevos contratos para prestar servicios médicos nocturnos al Municipio y que lo habían hecho en la oficina del Director de Personal del Municipio de Añasco a las 4:00 P.M. de ese día.

El 20 de julio de 1992 el demandante presentó una moción para solicitar la citación de testigos para una vista que estaba señalada próximamente, e incluyó al doctor Monteverde entre dichos testigos, *señalando la dirección precisa de éste.* Dicha moción fue notificada a la parte demandada.

Así las cosas, el 13 de agosto de 1992 se celebró una conferencia con antelación al juicio, en la cual la parte demandada informó que interesaba tomar deposiciones de los testigos anunciados por el demandante. El foro de instancia concedió entonces un término a las partes para concluir el descubrimiento de prueba. Ello dio lugar a que se citara al doctor Monteverde para tomarle una deposición el 24 de octubre de 1992.

Ese día el doctor Monteverde no compareció por encontrarse enfermo. El abogado de la parte demandada le co-

municó entonces al del demandante que interesaba tomarle la deposición al doctor Monteverde el 5 de diciembre de 1992, por lo que éste, *el propio abogado del demandante*, citó al doctor Monteverde para la toma de deposición aludida y le apercibió por escrito que podía ser encontrado incurso en desacato si no comparecía. Alegadamente, el doctor Monteverde acudió a la cita aludida, pero luego se marchó del lugar debido a que uno de los abogados de las partes no se presentó a la hora convenida y el doctor no podía esperar.

Posteriormente, luego de celebrarse otra conferencia con antelación al juicio, el foro de instancia le concedió un término a la parte demandada para que le tomara la deposición que interesaba al doctor Monteverde. De nuevo, el *propio abogado* de la *parte demandante* tramitó entonces que el tribunal de instancia emitiese una citación al doctor Monteverde para la toma de la deposición para el 28 de mayo de 1994, *la primera y única citación* emitida por el tribunal para tales fines. El abogado de la parte demandante se aseguró asimismo de que dicha citación judicial fuese debidamente diligenciada, pero el doctor Monteverde no compareció. Los representantes legales de ambas partes entonces acordaron pautar la toma de la deposición para el 18 de junio de 1994, y el abogado del demandante, de nuevo, se encargó de citar al doctor Monteverde para ello, pero éste tampoco compareció.

Con estos antecedentes, el 30 de agosto de 1994 se celebró el juicio. El doctor Monteverde compareció entonces, pero el tribunal a quo, a instancia del abogado de la parte demandada, no permitió su testimonio. Según surge de las minutas del juicio, la representación legal del demandante se opuso a la exclusión del testimonio esencial del doctor Monteverde, y le indicó al foro de instancia que dicho testimonio no constituiría una sorpresa para la parte demandada, debido a que ésta tenía desde hacía tiempo una declaración jurada del doctor Monteverde sobre lo que éste

testificaría en el juicio. No obstante, el tribunal no permitió la presentación del testimonio del doctor Monteverde. Consecuentemente, dicho foro indicó en su sentencia que el demandante no había presentado prueba para confirmar su propio testimonio de que había firmado un segundo contrato con el Municipio. Concluyó que no existía el alegado segundo contrato, y desestimó la acción del demandante.

Inconforme con este dictamen, el demandante acudió ante el Tribunal de Circuito de Apelaciones y alegó, *inter alia*, que el foro de instancia había incidido al no permitirle presentar el crucial testimonio del doctor Monteverde. El foro apelativo, por voto de 2–1, confirmó la decisión del tribunal sentenciador y convalidó la exclusión del testimonio en cuestión, como sanción justificada por las "reiteradas incomparecencias a la toma de deposición a las que fue citado".

De esta decisión acudió el demandante ante nos. En lo pertinente, adujo que el foro apelativo había errado al confirmar la exclusión del juicio de un testigo crucial suyo sin que dicha parte fuese responsable de modo alguno de la incomparecencia de éste a la toma de deposición interesada por la parte contraria. Señaló que se le había sancionado de modo drástico, a pesar de que dicha parte nunca se negó a descubrir prueba.

El 27 de febrero le concedimos un término a la parte recurrida para mostrar causa, si alguna tuviese, por la cual no debíamos expedir el auto solicitado y revocar la sentencia del foro apelativo. Dicha parte compareció, por lo que procedemos a resolver conforme a lo intimado.

## II

Es menester enfatizar, de entrada, que el testimonio del doctor Monteverde era evidentemente de gran importancia para que el demandante pudiese probar sus alegaciones en el caso de autos. Según se desprende de lo que declaró en el

juicio el propio Director de Personal del Municipio, el procedimiento para procurar la continuada prestación de servicios médicos como los de autos se iniciaba con la decisión del coordinador de guardias médicas del municipio de renovar el contrato de servicio interesado; luego se preparaba el contrato correspondiente, y se citaba al doctor concernido para que compareciera a firmarlo en la oficina del Director de Personal. El demandante ha alegado que el procedimiento aludido fue exactamente el que se siguió en su caso, pero que el nuevo contrato que él suscribió ha sido ocultado o desaparecido por el Municipio. El testimonio del doctor Monteverde, quien parece ser un tercero no interesado en el presente litigio, resultaba importante aquí, debido a que constituía la única corroboración de lo alegado por el demandante. Obviamente dicho testimonio podía ser determinativo de la cuestión esencial de si el contrato entre el Municipio y el demandante fue de hecho renovado.

En vista de lo anterior, procede entonces que se examine si el tribunal de instancia actuó correctamente al excluir del juicio el testimonio crucial del doctor Monteverde.

## III

Debe notarse que, como bien señala el peticionario, el hecho de que el Municipio demandado no lograra tomarle la deposición que interesaba al doctor Monteverde, no es atribuible de modo alguno a la parte demandante, que es la parte a quien se ha penalizado por la incomparecencia del doctor Monteverde a las citas que se le hicieron para tomarle la deposición en cuestión. No hay nada en el récord del caso de autos que siquiera sugiera que el demandante estuvo involucrado de algún modo en la incomparecencia de dicho testigo a la deposición que interesaba la parte demandada. Por el contrario, en todo momento el demandante hizo lo que estaba a su alcance para que se lograra la

toma de deposición aludida. De hecho, quien se ocupó de citar al doctor Monteverde en las distintas ocasiones en que se intentó tomar su deposición fue precisamente el propio demandante, quien incluso acudió en una ocasión al tribunal de instancia para obtener una citación judicial para ello.

El foro apelativo, que confirmó la actuación del tribunal de instancia, se amparó para ello en lo que dispone la Regla 34.2(b)(2) de Procedimiento Civil, 32 L.P.R.A. Ap. III, que dispone como sigue:

> (b) *Otras consecuencias.* Si una parte o un funcionario o agente administrador de una parte o una persona designada para testificar a su nombre, según disponen las Reglas 27.5 ó 28, dejare de cumplir una orden para llevar a cabo o permitir descubrimiento de prueba, incluyendo una orden bajo la Regla 34.1 y bajo la Regla 32, el tribunal podrá dictar, con relación a la negativa, todas aquellas órdenes que fueren justas, y entre ellas las siguientes:
>
> . . . . . . .
>
> (2) Una orden negándose a permitir *a la parte que incumpliere*, sostener u oponerse a determinadas reclamaciones o defensas, o prohibiéndole la presentación de determinada materia en evidencia. (Énfasis suplido.)

■ Como puede observarse, la disposición aludida, en lo que es pertinente aquí, permite que un tribunal prohíba la presentación de determinada materia en evidencia cuando la *parte* que interesa tal presentación hubiese *incumplido con una orden* de dicho tribunal para llevar a cabo o permitir descubrimiento de prueba. Dicha disposición, por sus propios términos, que son claros y contundentes, requiere: (1) que el tribunal haya emitido antes una orden para llevar a cabo o permitir descubrimiento de prueba, y (2) que la *parte* que interesa la presentación de la prueba hubiese incumplido la orden referida. En efecto, la regla federal de la cual procede la nuestra, la Regla 37(b)(2)(B), ha sido consistentemente interpretada como fundamento para sanciones como la del caso de autos

cuando una *parte* desobedece o incumple una *orden judicial* sobre descubrimiento de prueba. Véanse: *Barrett v. Atlantic Richfield Co.*, 95 F.3d 375 (5to Cir. 1996); *Meléndez v. Illinois Bell Telephone Co.*, 79 F.3d 661 (7mo Cir. 1996); *Derby v. Godfather's Pizza, Inc.*, 45 F.3d 1212 (8vo Cir. 1995); *Orjias v. Stevenson*, 31 F.3d 995 (10mo Cir. 1994); *Parker v. Freightliner Corp.*, 940 F.2d 1019 (7mo Cir. 1991); *Navarro de Cosme v. Hospital Pavia*, 922 F.2d 926 (1er Cir. 1991); *Hule v. Eaton Corp.*, 825 F.2d 448 (D.C. Cir. 1987); *In re Fine Paper Antitrust Litigation*, 685 F.2d 810 (3er Cir. 1982).

En el caso de autos, como se ha indicado ya, la parte que sufrió la exclusión del testimonio en ningún momento incumplió orden judicial alguna sobre descubrimiento de prueba. Como no estaba presente uno de los requisitos de la regla en cuestión, pues, no podía privársele del testimonio aludido.

■ Debe tenerse en cuenta, además, que la medida severa de excluir del juicio el testimonio de un testigo crucial, que es análoga a la medida extrema de la desestimación, sólo debe usarse en circunstancias excepcionales, en casos en los cuales la conducta de la parte sancionada ha sido contumaz o de mala fe, cosa que no ocurrió aquí. *Dorsey v. Academy Moving & Storage, Inc.*, 423 F.2d 858 (5to Cir. 1970). Véanse, además: *In re Paoli R.R. Yard PCB Litigation*, 35 F.3d 717 (3er Cir. 1994); *Jackson v. Harvard University*, 900 F.2d 464 (1er Cir. 1990). Sanciones tan drásticas como la de autos no son favorecidas judicialmente y sólo se justifican cuando la conducta de la parte a la que se le impone la sanción ha sido intencional. *Hartman v. Tribunal Superior*, 98 D.P.R. 124 (1969). Aplican al caso de autos, por analogía, nuestros pronunciamientos previos de que la imposición de sanciones procesales severas debe ocurrir sólo cuando no exista duda de la irresponsabilidad o contumacia de la parte contra quien se tomó la

medida. *Amaro González v. First Fed. Savs.*, 132 D.P.R. 1042 (1993). En este caso, no hubo nada en la conducta procesal del demandante que justificase la sanción que se le impuso.

■ Debe considerarse también que el propósito que anima la Regla 34.2 de Procedimiento Civil, *supra*, en general es el de proveerle al foro judicial una diversidad de remedios *para propiciar el descubrimiento de prueba*. La regla aludida proporciona al tribunal varias sanciones distintas para lograr dicho propósito, para que éste las utilice de acuerdo con la situación particular que tenga ante sí. La meta de este entramado procesal es darle efectividad al mecanismo de descubrimiento de prueba. Véase 8A *Wright and Miller, Federal Practice and Procedure: Civil 2d* Sec. 2281 (1994). Es por ello que la sanción principal que establece dicha regla es la de *desacato*. 32 L.P.R.A. Ap. III, R. 34.2(a). Es tal sanción la que de ordinario procede en casos de negativas a descubrir prueba, porque es la más útil para lograr el fin de obtener el descubrimiento interesado. "Sanctions are intended to prompt a party to respond." *Wright and Miller*, supra, pág. 595.

■ En el caso de autos, si la parte demandada hubiese invocado específicamente el procedimiento de apremio y desacato, probablemente hubiese obtenido la deposición que interesaba. Dicha parte, sin embargo, nunca acudió al tribunal para ello. Tenía a su alcance el medio para obligar al doctor Monteverde a comparecer a la toma de la deposición que interesaba, conforme lo disponen las Reglas 27.1 y 40.4 de Procedimiento Civil, 32 L.P.R.A. Ap. III, pero no lo usó. No demostró la diligencia procesal que era imprescindible para poder invocar luego la sanción drástica de excluir el testimonio crucial del doctor Monteverde. Ya antes, en relación con la contestación de un interrogatorio, habíamos resuelto que para que una parte que sea víctima del incumplimiento del deber de des-

cubrir prueba pueda invocar sanciones severas, debe haber desplegado la debida diligencia para procurar el descubrimiento de prueba que interesaba. *Pepín v. Ready-Mix Concrete*, 70 D.P.R. 758 (1950). Ello no ocurrió en el caso de autos, lo que constituye una razón más por la cual no procedía la exclusión del testimonio del doctor Monteverde.

■ Finalmente, debe tenerse en cuenta que reiteradamente hemos resuelto que existe una política judicial de que los casos se ventilen en sus méritos. *Rivera et al. v. Superior Pkg., Inc. et al.*, 132 D.P.R. 115 (1992); *Mercado v. Panthers Military Soc., Inc.*, 125 D.P.R. 98 (1990); *Echevarría Jiménez v. Sucn. Pérez Meri*, 123 D.P.R. 664 (1989); *Maldonado v. Srio. de Rec. Naturales*, 113 D.P.R. 494 (1982); *Garriga Gordils v. Maldonado Colón*, 109 D.P.R. 817 (1980); *Acevedo v. Compañía Telefónica de P.R.*, 102 D.P.R. 787 (1974); *Ramírez de Arellano v. Srio. de Hacienda*, 85 D.P.R. 823 (1962). Esta política fundamental no se cumple cuando a una parte se le priva de traer al juicio un testigo esencial, sin que haya razones de peso para tal privación imputables a dicha parte. Por otro lado, debe recordarse que el derecho a presentar testigos en apoyo de una reclamación es uno de los ejes centrales del debido proceso de ley. *Ortiz Cruz v. Junta Hípica*, 101 D.P.R. 791 (1973). Véanse, además: *Pueblo v. Morales Rivera*, 118 D.P.R. 155 (1986); *Vélez Ramírez v. Romero Barceló*, 112 D.P.R. 716 (1982); *Pagán v. Registrador*, 62 D.P.R. 594 (1943). No puede afectarse ese derecho, excepto en situaciones en que ello esté plenamente justificado.

Como hemos señalado antes, todo proceso adjudicativo se informa en los valores superiores de hallar la verdad y hacer justicia. *Pueblo v. Miranda Santiago*, 130 D.P.R. 507 (1992); *Echevarría Jiménez v. Sucn. Pérez Meri*, supra, pág. 675; *Berríos v. U.P.R.*, 116 D.P.R. 88 (1985); *J.R.T. v. Aut. de Comunicaciones*, 110 D.P.R. 879 (1981). Por eso, la decisión de un tribunal de excluir del juicio un testimonio

crucial tiene que estar fundamentada en la más imperiosa justificación. No cabe duda de que nuestro ordenamiento procesal consagra un innegable interés en la pronta solución de las controversias y en que las partes puedan llevar a cabo un descubrimiento de prueba amplio y expedito, pero ambos intereses presuponen una acción diligente de la parte concernida o una acción entorpecedora de la otra parte, cosas que no están presentes en este caso. No existe aquí, pues, la imperiosa justificación que permita conculcar los fines preeminentes del proceso judicial de hallar la verdad y hacer justicia. El balance equitativo entre los intereses en conflicto que el tribunal debe hacer en casos como el de autos —*Dávila v. Hosp. San Miguel, Inc.*, 117 D.P.R. 807 (1986)— resulta claramente en contra del dictamen impugnado.

En resumen, pues, erró el tribunal de instancia al ordenar la exclusión del testimonio en cuestión sin antes haber usado su facultad de apremio y desacato para lograr que el testigo compareciese a la toma de deposición. Su dictamen no constituyó la "orden justa" que está prevista en la Regla 34.2(b) de Procedimiento Civil, *supra*. Erró igualmente el foro apelativo al confirmar la sentencia de instancia.

Por los fundamentos expuestos, *se expedirá el auto solicitado y se dictará sentencia para revocar la de 17 de septiembre de 1997 del foro apelativo, la del Tribunal de Primera Instancia, Sala Superior de Mayagüez, de 19 de mayo de 1995, y para ordenar la celebración de un nuevo juicio conforme a lo aquí resuelto.*

El Juez Asociado Señor Corrada Del Río disintió sin opinión escrita.